UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MARILYN MATTHEWS )
)
Plaintiff, )
)
v. )          7:16-cv-01937-LSC
)
FAURECIA AUTOMOTIVE )
SEATING, INC., )
)
Defendant. )

MEMORANDUM OF OPINION

Plaintiff Marilyn Matthews ("Matthews" or "Plaintiff"), a 44 year old female, brought the instant action against her former employer, Faurecia Automotive Seating, Inc. ("Faurecia") and others, alleging claims for gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] 42 U.S.C. § 2000e *et seq.* Faurecia is the only remaining Defendant. **Before the Court is Faurecia's** motion for summary judgment (doc. 39). For the reasons stated below, the motion is due to be granted.

---

[1] Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2[a][1].

I.   BACKGROUND[2]

Faurecia is a first-tier supplier of automotive equipment and parts; they specialize in manufacturing seating.  After working on a nonpermanent basis, Matthews began her employment on January 13, 2014 at the Cottondale, Alabama location of Faurecia as a full-time Production Operator.  **Matthews' duties included pulling leather over seats for Mercedes Benz vehicles.**  On January 21, 2014, approximately one week after she began work, Matthews received an injury to her hand.  She reported the injury to her supervisor at the time.[3]  According to Matthews, she filed numerous complaints and grievances with her Union not only for the improper handling of her injury, but also incidents she claims prevented Faurecia from being a conducive working environment.[4]

_____

[2]     The facts set out in this Opinion are gleaned from the parties' submissions of facts claimed to be undisputed and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*,  17 F.3d 1386, 1400 (11th Cir. 1994).  The Court is not required to identify unreferenced evidence supporting a party's position.  As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties.  *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotations omitted).

[3]     Matthews worked under a number of different supervisors during her time as a Faurecia employee.

[4]     In her deposition, Matthews testified that she "filed several grievances [and] written complaints . . . with her Union." (Pl. Dep. at 57.) Matthews avers that she filed two complaints

As a part of the orientation process, Faurecia requires new hires to sign a Receipt and Acknowledgment form demonstrating that they have read and understood **Faurecia's Employment Handbook ("the Handbook").** Matthews signed the form indicating her receipt and understanding of its contents on December 12, 2013. (Doc. 41-1 at 10, Ex. 1G.) The Handbook includes **Faurecia's** attendance policy, which provides that "**[a]n absence of three (3) or more** consecutive days without reporting will result in voluntary termination of **employment with the Company."** (Doc. 41-1 at 12-14, Ex. 1C, Employee Handbook.) The attendance policy assesses points and partial points for **employees' unapproved absences and tardiness.** (*Id.* at 12-13.) It specifies that "**immediate** termination **of employment"** is warranted after an employee has accumulated 10 attendance points during a 12-month rolling calendar period. (*Id.* at 13.)

---

against Michael Hamilton ("**Hamilton"**). (Compl. ¶ 29.) Additionally, she filed two complaints against Shavonte Bonner ("**Bonner"**) over several instances of harassment and physical contact Bonner had with her, including Bonner "**snatching"** carts from **Matthews'** hands and pulling them to the other side of the line. (*Id.* ¶ 39.) She also made two reports of repeated incidents of harassment and hostility from Raven Christine **Rudolph** ("**Rudolph"**). (*Id.* ¶ 35.) The Union filed a grievance on **Matthews' behalf and a co**-worker she was having trouble with was placed on another shift. (*Id.* ¶ 37.) She was fired within 24 hours of filing her grievance against Bonner. (*Id.* ¶ 41.) Finally, she filed a grievance for wrongful termination with the Union before contacting the EEOC. (*Id.* ¶ 52.) The last grievance is the only one in the record. (Doc. 41-1, Ex. H.)

As of the end of June, Matthews had accrued 12.5 points during a 12-month rolling calendar period. On July 1, 2014, instead of terminating Matthews, Faurecia gave her a one-day suspension and issued a written warning apprising her of the fact that receiving any further points would result in dismissal from Faurecia. (*See* Suspension Letter, Doc. 41-1 at 21, Ex. 1F.) Thereafter, in the wake of her suspension and warning, between June 29, 2014 and August 1, 2014, Matthews received an additional 4.5 attendance points. (Parrish Bowlin ("Bowlin") Declaration, Ex. 1.) Bowlin, a Faurecia Human Resources ("HR") manager to whom all Shift Supervisors directly reported, terminated Matthews effective August 21, 2014, for her violation of the attendance policy. (Termination Letter, Doc. 41-1 at 23, Ex. 1G.) At the time of her discharge, Matthews had received a total of 17 attendance points.[5]

---

[5] Matthews alleges that Bowlin fraudulently documented she had accumulated attendance points which she had not, and that most of the points should have been excused under the terms of the attendance policy. Other points were due to when she was marked absent from third shift after being changed to second shift and the system had not been updated, even though Faurecia had been notified of her shift change. Additionally, Matthews insists that Jeremy Akins ("Akins"), a supervisor, made a false statement to Bowlin alleging he had only approved one vacation day for Matthews' absences in July when Matthews was sure he had approved two. (Compl. ¶ 44-46.) Matthews also avers that most of her absences were related to pain or medical treatment, which Faurecia had received documentation of via doctors' notes. Other absences she insists were excused as vacation, sick days, or approved leave. In one instance, Mathews was caught in inclement weather and rescued by law enforcement, who called Faurecia to report the incident and explain the reason for her tardiness. (Compl. ¶ 31-35.)

According to Matthews, on the day Bowlin fired her, she had written out a grievance against her female co-worker Shavote Bonner ("Bonner") who was physically threatening her. Immediately thereafter, Akins, her supervisor at the time, told her that Bowlin wanted to see her in his office. Matthews complied and brought the union shop stewardess on duty, Diane Austin ("Austin"), to Bowlin's office with her. Akins accompanied them as well. Austin had Matthews' written statement in hand; upon their entering Bowlin's office he snatched the statement, then looked at Matthews and said that her services were no longer needed. Bowlin then refused to give the grievance back to either Matthews or Austin—though they both pointed out that Matthews had the right to make her complaint and present it to union representatives. The three of them went back and forth about Matthews' rights, and also about whether or not Matthews had actually exceeded the allowable attendance points. (*See* Pl. Dep. at 78- 80, 127.)

On August 22, 2014, Matthews' union filed a grievance on her behalf. After review, Faurecia determined that "the discipline given was appropriate," and denied the grievance request for reinstatement owing to the fact that Matthews' termination was in conformance with Faurecia's attendance policy and did not violate the labor agreement between it and the union. (Doc. 41-1 at 26, Ex. 1H.)

The union subsequently withdrew its grievance by letter dated November 6, 2014. (Doc. 41-1 at 28, Ex. 1I.)

On November 4, 2014, Matthews filed two Unfair Labor Practice Charges with the National Labor Relations Board, in which she alleged her discharge was on account Faurecia's efforts "to discourage union activities[6] or membership," and that her union grievance was not considered "for arbitrary or discriminatory reasons or in bad faith." (Doc. 41-2 at 2.) Both of the Charges were withdrawn in letters dated November 20, 2014. (Pl. Dep. at 111-12.)

Matthews filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 7, 2014, alleging age discrimination and retaliation in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). Matthews did not allege discrimination based on sex or gender in the first section of her EEOC charge. She did, however, briefly reference how gender played a role in the discrimination she experienced in the explanation section located below the heading. She specifically alleged that she "opposed discriminatory employment practices by filing complaints with the union

---

[6]     "On several occasions as Ms. Matthews spoke with a union representative with regard to her injuries, Jessie Shepherd ("Shepherd"), [a Faurecia supervisor] would follow her and watch the conversation, making eye contact with Ms. Matthews to intimidate her and prevent her participation in Union activity and furtherance of her claim." (Compl. ¶ 24.)

about being subjected to adverse treatment that employees not of [her] protected class Age (44) were not." (Doc. 41-4 at 2, EEOC Charge.) Matthews also averred that she had lodged complaints to Faurecia Supervisor Chris James ("James") regarding an incident in which her co-worker, Hamilton stated to Matthews that she "needed to be in a nursing home" and that "women were a distraction . . . ." (*Id.*) James refutes that Matthews ever specifically complained to him about discriminatory practices, discrimination or harassment on the basis of her age or gender. There were also other incidents which Matthews avers contributed to her claims. Some female co-workers, Bonner and Rudolph allegedly assaulted her, dropped parts on the floor and stared at her. On September 15, 2015, the EEOC issued Matthews' Dismissal and Notice of Rights Letter.

Matthews filed the present action in December of 2016, alleging gender discrimination, hostile work environment based on gender, and retaliation in violation of Title VII. Her Complaint makes no reference to any allegations of discrimination based on age which were raised in her EEOC charge. Though

Matthews was initially represented, her counsel was terminated on July 10, 2017, and she now precedes *pro se.*[7]

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[8] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*  A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)).  The trial judge should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[7]  "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (internal quotation marks and citation omitted).

[8]  A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. DISCUSSION

Matthews failed to respond to Faurecia's motion for summary judgment; however, this Court is nonetheless obligated to determine whether Faurecia is entitled to judgment as a matter of law on the undisputed facts.[9] *See Trs. of Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004) (per curiam) (A district court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." (internal quotation marks omitted)).   As such, the Court will address the merits of Faurecia's motion.

### A. TITLE VII GENDER DISCRIMINATION CLAIM

Matthews avers that she was discriminated against on the basis of her sex by Faurecia's decision to discharge her.   A plaintiff can prove her Title VII discrimination claim by either direct or circumstantial evidence. *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1236-37 (11th Cir. 2016).   Matthews has presented the Court with no direct evidence, but circumstantial evidence is before the Court

---

[9] Matthews' failure to respond to Faurecia's motion for summary judgment or to place any evidence before this Court has created a situation in which all of Faurecia's evidence is undisputed.

in the form of her deposition testimony submitted by Faurecia. When analyzing a claim of discrimination by way of circumstantial evidence, the Court applies the *McDonnell Douglas Corp. v. Green* burden-shifting framework. *Id.* at 1238 n.7; *see also Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam).

Under *McDonnell Douglas*, a plaintiff carries the initial burden of producing circumstantial evidence sufficient to prove a *prima facie* case of discrimination. 411 U.S. 792, 802 (1973); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999). If the plaintiff meets her initial burden of establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016), *cert. denied sub nom. Trask v. Shulkin*, 137 S. Ct. 1133, 197 L. Ed. 2d 176 (2017). If the defendant is successful, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Id.* (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)).

In order to establish a *prima facie* case of gender discrimination, Matthews must prove that she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less

favorably than a similarly-situated individual outside her protected class. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). Matthews satisfies the first three components of her gender discrimination claim. To meet the similarly-situated element, Matthews is required **identify a comparator who is** "**similarly** situated 'in all relevant respects'" **and** "**nearly identical**" to herself in order "**to prevent courts from second-guessing a reasonable decision by the employer.**" *Id.* (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). Matthews has not pointed to any male employee who was suspended, placed on a probationary agreement, and thereafter accumulated 4.5 additional attendance points that was not subsequently discharged. The identification of a comparator is an essential component to the establishment of her prima facie case—and Matthews has failed to provide one.

Nonetheless, **the Court's analysis does not end there.** "If [, as here,] a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evide**nce of discrimination is present.**" *Holifield*, 115 F.3d at 1562 (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989)). In her complaint, Matthews attempts to show gender discrimination by alleging that Faurecia "engag[ed] in, tolerat[ed], or fail[ed] to prevent the harassment of various employees and failing to take affirmative and

corrective action to correct and redress unlawful employment practices[;]" and by "**constructively discharging and otherwise discriminating against her because** of her opposition to the unsolicited and unwelcome contact forced upon her in the **workplace.**" (Compl. ¶ 58.) The contact Matthews references presumably has to do with the physical contact that Bonner made and the eye contact Shepherd made with her. However, in her deposition, Matthews admitted that the conduct had "**noth**ing to do with her being female" but instead was on account of animosity **between Bonner and one of Matthews' family members.** (Pl. Dep. at 102; 82.) The only other allegation Matthews makes regarding discrimination based on her gender is the single comment Hamilton made to her about how women were a distraction and were just in the way.

Though the above mentioned incidents formed the basis for many of the complaints and grievances Matthews filed, the evidence before the Court does not present a convincing argument that gender was indeed the basis for any discrimination. In sum, the evidence before the Court is insufficient to create a *prima facie* case of gender discrimination or a dispute of material fact surrounding those allegations. As such, summary judgment is due to be granted on **Matthews'** Title VII gender discrimination claim.

B. TITLE VII HOSTILE WORK ENVIRONMENT CLAIM

To establish a *prima face* case for a hostile work environment claim under Title VII, Matthews **"must show that: (1) she belongs to** a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive so as to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct lia**bility."** *Cheatham v. DeKalb Cty., Ga.*, 682 Fed. Appx. 881, 887 (11th Cir. 2017)[10] (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010)).

Plaintiff answered in the affirmative when asked if her hostile work environment claim was based on her allegation that she suffered a hand injury to which Faurecia failed to adequately respond.  (Pl. Dep. at 91-92, 101.)  She insists that the failure of supervisors to report her injuries and the delay in treatment interfered with her ability to perform her duties in an efficient manner, which then engendered demeaning comments about her needing to be in a nursing home, thus creating a hostile work environment.  (Pl. Dep. at 92.)

---

[10]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Matthews also alleges that her female co-workers, Bonner and Rudolph contributed to a hostile work environment by assaulting her, dropping parts on the floor and staring at her. (Pl. Dep. at 76-78, 94-95, 98.) However, she admitted that their conduct ha[d] nothing to do with her being female." (Pl. Dep. at 102.) Accordingly, Bonner and Rudolph's actions do not qualify as actions which would amount to a hostile environment. *See Trask*, 822 F.3d at 1195 (comments or actions that are offensive and belitting, but not based on a protected category, cannot be used to establish hostile work environment claim); *see also See Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009) ("Innocuous statement or conduct, or boorish ones that do not relate to the [sex or gender] of the actor or the offended party (the plaintiff), are not counted."). Though Bonner and Rudolph's conduct occurred on more than one occasion, was allegedly physically threatening, and would have presumably interfered with Matthews' job performance, it was admittedly not on account of her gender, and thus cannot form the basis for a hostile work environment claim.

In its motion, Faurecia argues that the alleged conduct was neither severe nor pervasive enough to amount to a modification in Matthews' employment. To satisfy the fourth element of this claim, Matthews must present evidence that is subjectively and objectively severe or pervasive. Plaintiff "must subjectively

perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and the objective severity of harassment should be judged from the perspective of a reasonable person in [Matthews'] position, considering all the circumstances." *Palmer v. McDonald*, 624 Fed. Appx. 699, 703 (11th Cir. 2015) (citing *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014)); *see also Mendoza v. Bordon, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc), *cert. denied*, 529 U.S. 1068 (2000). Plaintiff herself must subjectively perceive the environment to be abusive and the harassing behavior must also render the work environment one that a reasonable person would find hostile or abusive. *Id.* at 1245 (quoting *Harris*, 510 U.S. at 21-22). When "evaluating the objective severity of the harassment, this [C]ourt looks at the totality of the circumstances and considers, among other things: '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Gowski*, 682 F.3d at 1312 (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)).

Plaintiff contends that comments Hamilton made about her various injuries created a hostile work environment based on the injuries she sustained. (Pl. Dep. at

93.) A number of those comments had to do with Plaintiff's age—which she has not alleged as a basis for her discrimination in this lawsuit. In her deposition, Matthews admitted that Hamilton only once mentioned that women were a "distraction," and he never said "anything else about [her] gender"—conceding that his comment was the sole piece of evidence relating "to sex." (Pl. Dep. at 86-88, 104.) Matthews filed a complaint with her union stating that Hamilton's remarks "referencing [her] age and sex [] sufficiently interfered with [her] work performance and induced co-workers not of [her] protected class to laugh at [her], call [her] crazy, call [her] slow, and say [she] was strange." (Pl. Dep. at 72-73; Doc. 41-3 at 47.) Hamilton's comment in and of itself is not severe. While the comment may have prompted a number of other unwelcomed remarks, even when considered in the aggregate and in a light most favorable to Matthews, the offensive statements do not rise to the requisite level of severity sufficient to establish a hostile work environment claim. *See Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (workplace must be so "permeated with discriminatory intimidation, ridicule, and insult" that the very terms and conditions of a plaintiff's employment are altered for a work place to be considered an abusive environment).

In sum, the majority of the treatment Plaintiff experienced which affected her working environment was not caused by her being female; and the single

comment by Hamilton, though based on her gender, falls far short of the severe and pervasive threshold. As such, she cannot survive summary judgment on her Title VII hostile work environment claim.

## C. TITLE VII RETALIATION CLAIM

Matthews maintains that Faurecia retaliated against her because she suffered a workplace injury to which Faurecia failed to adequately respond, she reported the harassment, and filed grievances with her union. (Pl. Dep. at 105-06, 108, 112-113.)

Retaliation claims that rely on circumstantial evidence are analyzed using the burden-shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Bryant*, 575 F.3d at 1307. Under *McDonnell Douglas*, plaintiff first bears the burden of establishing her *prima facie* case. To make out a prima facie case for retaliation under Title VII, a plaintiff must show that (1) she was engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016) (citations omitted).

Once the plaintiff has demonstrated her prima facie case, *McDonnell Douglas* next requires defendants to meet their "burden of producing a legitimate, non-discriminatory reason for the challenged employment action." *Denney v. City of*

*Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001).  Finally, "[i]f such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext **for unlawful discrimination.**" *Id.*

### i. PRIMA FACIE CASE

There is no dispute that Plaintiff suffered a materially adverse employment action—she was terminated.  Consequently, the two prongs Plaintiff must establish are that she engaged in statutorily protected activity, and there was a causal connection between that activity and her termination.  Fauercia avers that Matthews has presented no evidence that would satisfy either—the Court agrees.

### 1. STATUTORILY PROTECTED ACTIVITY

In its motion, Faurecia **sets forth that Matthews' basis for her retaliation** claim is because she suffered a workplace injury to which Faurecia failed to adequately respond; and because she reported harassment to and filed grievances with her union.  In her complaint, Matthews av**ers that "most Faurecia employees** had grievances and complaints about other employees or practices within the company, however very few ever followed through with actual formal grievances or **complaints due to fear of retaliation.**"  (Pl. Compl. ¶ 49.)

Pursuant to Eleventh Circuit precedent, **Matthews' filing of a grievance with** her a union does not qualify as protected activity within the ambit of Title VII.

"Unfair treatment, absent discrimination based on sex, or national origin, is *not* an unlawful employment practice under Title VII." *Coutou v. Martin Cty. Bd. Cty. Com'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (per curiam) (emphasis in original) (finding that plaintiff failed to prove that a grievance she filed constituted statutorily protected activity as she made no allegation, nor presented any proof of discrimination based on a protected category during her grievance hearing). The substance of most of **Matthews'** complaints and grievances is unknown to the Court because Plaintiff has not filed an opposition to summary judgment or any accompanying evidentiary submissions. The only grievance on record is one **contained in Defendant's evidentiary submissions** which Plaintiff filed after her termination. It **simply states that "Matthews was wrongly terminated . . . because she [spoke] up" and she has "information that she needs to be reinstated . . . .'"** (Doc. 41-1 at 25.) In her deposition, Matthews confirmed that one of her **grievances stated that she** "opposed discriminatory employment practices by filing **complaints with the Union."** (Pl. Dep. at 60.) However, nowhere does she allege that any of her complaints were based upon a protected category; as such she did not engage in statutorily protected activity and cannot establish a prima facie case of retaliation under Title VII.

2. Causal Link

The Court also finds that Matthews cannot succeed in showing a causal link. In order to establish a causal link, Matthews must show that **Faurecia's "'desire to retaliate was the but-for cause of the challenged employment action.'"** *Cheatham*, 682 Fed. Appx. at 886 (citing *Booth v. Pasco Cty., Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014)). A plaintiff can meet this element by offering sufficient evidence that the employer knew of the statutorily protected activity and that there was a close temporal proximity between this awareness and the adverse employment actions. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that the temporal proximity must be "very close"). Matthews testified she was fired on "same day" she filed a grievance. (Pl. Dep. at 100.) Certainly, being fired on the same day of voicing a complaint is "very close temporal proximity." *Breeden*, 532 U.S. at 273. Even so, as explained above, Matthews' grievance does not qualify as statutorily protected activity under Title VII and Matthews has failed to provide evidence of Bowlin's knowledge.

Bowlin asserts **that he was unaware "of any grievances Matthews had filed** with her Union regarding alleged discriminatory practices prior to her **termination."** (Bowlin Decl., Ex. 5.) Matthews testified in her deposition to the veracity of the claims she asserted in one of her EEOC complaints, in which she

averred, "Bowlin was aware prior to discharging [her] that [she] had filed a grievance protesting the accumulation of points against [her] during periods of approved vacations and transfer . . . . [T]he investigation into [her] complaint had not been resolved before being discharged and Mr. Bowlin was aware of that fact." (Pl. Dep. at 56-57.) However, Matthews provides the Court with no evidence or testimony specifically as to how Bowlin would have possessed such knowledge. She provides only unsubstantiated assertions which are conclusory, and altogether insufficient to defeat a motion for summary judgment.

## ii. Legitimate Nondiscriminatory Reason & Pretext

Assuming, *arguendo* that Matthews had established her *prima facie* case, the burden of production would then shift to Faurecia to produce a legitimate, nondiscriminatory reason for firing her. The burden Faurecia bears here is "exceedingly light." *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983). "At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is 'merely one of production, not proof.'" *Id.* (quoting *Lee v. Russell Cty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)). Here, Faurecia stated that Matthews was suspended and subsequently discharged on account of her violation of its

attendance policies. **It has thus met its "exceedingly light" burden of production.**
*Id.*

The burden then shifts back to Matthews to show that **Faurecia's** proffered reason is mere pretext for unlawful retaliation. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). To demonstrate pretext, Matthews "must cast sufficient doubt on [Faurecia's] proffered non-discriminatory reasons to allow a reasonable factfinder to determine that the proffered legitimate reasons **were not what actually motivated its conduct.**" *Hawkins v. BBVA Compass Bancshares, Inc.*, 613 Fed. Appx. 831, 837 (11th Cir. 2015) (quoting *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (internal quotations omitted). Pretext can be shown **"either directly by persuading the court that a** discriminatory reason more likely motivated the employer or indirectly by showing **that the employer's proffered explanation is unworthy of credence."** *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). **"When a plaintiff chooses to attack the veracity of the employer's proffered reason, '[the] inquiry is limited to** whether the employer gave an honest explanation of **its behavior.'"** *Id.* at 1310–11.

Here, Matthews opposes **the veracity of Faurecia's proffered reason,** thus **the Court's analysis is cabi**ned to whether Faurecia gave a legitimate reason.

Considering the absence logs, Bowlin's declaration, the attendance policies in the Handbook, and Matthews' acknowledgement of her receipt and understanding of the Handbook along with its contents, **the Court finds Faurecia's** proffered reason for terminating Matthews to be reasonable.

Accordingly, Matthews must **demonstrate** "such weaknesses, **implausibilities, inconsistencies, incoherencies, or contradictions in the employer's** proffered legitimate reasons for its action that a reasonable factfinder could find **them unworthy of credence."** *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). She also must show **"not just that [Faurecia's] proffered reasons** for firing her were ill-founded but that unlawful discrimination was the true **reason."** *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253 (11th Cir. 2010) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148 (2000)). Matthews argues that the attendance points assessed to her were inaccurate,[11] and that the reason she was terminated was because of the complaints she raised and

---

[11]     Even if Faurecia was mistaken, Matthews must still prove that its reason for terminating her was an illegal one. *See Flowers v. Troup Cty.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("Put frankly, employers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.") (citations and internal quotations omitted).

the union grievances she filed. Bowlin, the person who terminated Plaintiff, was in charge of assessing attendance points.

The testimony Matthews provided in her deposition about the day she was terminated certainly casts Bowlin in a negative light. Indeed, Bowlin denies knowing anything about Matthews' filing any grievances with her Union prior to her termination. Yet under Plaintiff's versions of the facts, he dismissed her immediately after he found out that she was filing another union grievance, and he did so in the presence of the union shop stewardess who had the complaint in hand. However, that grievance was based upon the conduct of Bonner and Shepherd — action that Matthews admitted had nothing to do with her gender. (Pl. Dep. at 102; 82.) Consequently, Matthews cannot show that an "unlawful discriminatory animus motivate[d] [Faurecia's] challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). In sum, summary judgment on Matthews' Title VII retaliation claim is due to be granted.

IV.  CONCLUSION

For the reasons stated above, Faurecia's motion for summary judgment (doc. 39) is due to be GRANTED as to all of Plaintiff's claims, and the case dismissed in its entirety. An Order consisted with this Opinion will be entered contemporaneously herewith.

DONE and ORDERED on June 19, 2018.

_____
L. Scott Cooper
United States District Judge

190685